IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DJAVANSHIR D. GADJIEV,

       Plaintiff,

v.

ATLANTA INDEPENDENT SCHOOL
SYSTEM, STEPHANIE A. BAILEY,
in her individual capacity,
and THOMAS W. GLANTON,
in his individual capacity,

       Defendants.

CIVIL ACTION NO.
1:12-cv-2700-JEC

**OPINION & ORDER**

    This case is before the Court on defendants' Motion to Dismiss [6]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendants' Motion [6] should be **GRANTED in part** and **DENIED in part**.

**BACKGROUND**

    This case arises from plaintiff's employment as a math teacher with the Atlanta Independent School System ("AISS"). Plaintiff has a Master's degree from the University of Tennessee and a Ph.D from the University of Moscow, both in mathematics. (Compl. [1] at ¶ 8.) He has taught high school and college math in the United States for over ten years. (*Id.*) In July 2007, plaintiff began working for defendant AISS as a calculus instructor at South Atlanta High School.

(*Id.* at ¶ 13.)  From 2007 until 2010, plaintiff's record at South Atlanta was generally positive.  (*Id.* at ¶¶ 14-16.)

During the 2009-10 school year, courses at South Atlanta were discontinued.  (*Id.* at ¶ 17.)  For the following year, AISS transferred plaintiff to Frederick Douglass High School ("Douglass"). (Compl. [1] at ¶ 17.)  Students at Douglass generally had poor attendance and disciplinary records, and for several years prior to plaintiff's transfer the school had failed to make "Adequate Yearly Progress" ("AYP") as required by the No Child Left Behind Act.  (*Id.* at ¶¶ 18, 23.)  Specifically, Douglass consistently failed to make AYP in mathematics.  (*Id.* at ¶ 20.)  Plaintiff believed his transfer was part of an effort to address that deficiency.  (*Id.*)

It is an understatement to say that when plaintiff arrived at Douglass, the conditions there were not conducive to teaching or learning.  During his first semester at Douglass, plaintiff was assigned to teach two math classes that contained over 60 students and that were scheduled at the same time in different classrooms. (*Id.* at ¶¶ 26, 29-31.)  To simultaneously teach in both math classes, plaintiff had to rotate between two adjacent rooms, which meant that one class was always unsupervised.  (Compl. [1] at ¶ 31.)  When plaintiff complained about that situation to Academy Leader Stephanie Bailey, she told him to "[d]o [his] best."  (*Id.* at ¶¶ 28, 31.)

Not surprisingly under the circumstances, plaintiff's students

2

behaved and performed poorly. (*Id.* at ¶¶ 36-39.) They physically threatened plaintiff, used cell phones at school, and did not bring adequate materials to class, such as pencils and books. (*Id.*) On one occasion, plaintiff was attacked so severely that he required treatment in the emergency room. (*Id.* at ¶ 37.) Plaintiff contacted "instructional coach" Cheryl Jenkins for assistance with some of these problems, but she was not helpful.[1] (Compl. [1] at ¶ 33.) Although his class sizes were eventually "adjusted" to a maximum of 32 students, many of the behavior and performance problems persisted. (*Id.* at ¶ 35.)

At the beginning of the school year, plaintiff sent emails to Principal Glanton and Academy Leader Bailey indicating that his classes were significantly overpopulated in violation of Georgia law. (*Id.* at ¶¶ 41-42.) Plaintiff also informed Glanton and Bailey that his disabled students were not receiving an appropriate education in violation of federal, state and local law. (*Id.* at ¶ 64.) Plaintiff repeated these concerns to AISS administrators, including Associate Superintendent Randolph Bynum and Math Chair Dottie Whitlow. (*Id.* at ¶ 40.) Apparently no one in the building or up the chain of command responded to plaintiff's concerns.

---

[1] In fairness to the "coach," it is not clear how she could have helped plaintiff teach math to more than 60 students who were located in two different classrooms.

As the school year progressed, plaintiff continued to express similar grievances. In December 2010, plaintiff emailed Bailey concerning the lack of special education support provided for his classroom. (Compl. [1] at ¶¶ 45-46.) Over the next several months, plaintiff complained to Glanton and Bailey about unresolved disciplinary issues, including their failure to take any disciplinary action against a student who had assaulted him. (*Id.* at ¶¶ 47-50.) Apparently, Bailey explained to plaintiff that AISS policy was that no black male could be given out-of-school suspension. (*Id.* at ¶¶ 68-69.) Otherwise, the administrators failed to respond to plaintiff's grievances. (*Id.* at ¶ 53.)

Plaintiff claims that as a result of his complaints, various AISS officials retaliated against him throughout the 2010-11 school year. For example, in mid-September 2010, Glanton and Bailey put plaintiff on a Professional Development Plan ("PDP") that indicated a need to improve his classroom management skills. (*Id.* at ¶ 57.) At some point during the year, Glanton also denied plaintiff's request to teach a more advanced math class. (Compl. [1] at ¶ 65.) Ultimately, Glanton recommended that plaintiff be terminated at the end of the 2010-11 school year. (*Id.* at ¶ 70.) Superintendent Beverly Hall notified plaintiff of Glanton's decision and terminated his employment effective May 26, 2011. (*Id.* at ¶ 71.) Hall's decision was upheld by the AISS Board and the Georgia Board of

4

Education.  (*Id.* at ¶¶ 72-76.)

In September 2011, plaintiff filed an EEOC Charge against defendants alleging unlawful termination and discrimination.  (*Id.* at ¶ 54.)  Approximately a year later, plaintiff brought this lawsuit.  In his complaint, plaintiff alleges that defendants terminated him in retaliation for his statements about the conditions at Douglass.  (Compl. [1] at ¶¶ 99-100, 105-06.)  According to plaintiff, his termination thus violated the First Amendment.  (*Id.*)  Plaintiff also claims that his speech was protected by § 504 of the Rehabilitation Act (the "Rehab Act") and the anti-retaliation provision of the Americans with Disabilities Act ("ADA"), giving rise to a claim under both of those statutes.  (*Id.* at ¶¶ 106-07, 110-13.)  Finally, plaintiff asserts a claim under the Georgia Whistleblower Act.  (*Id.* at ¶¶ 115, 118.)  Defendants move to dismiss the complaint under Federal Rule 12(b)(6) or, in the alternative, for a more definite statement under Federal Rule 12(e).  (Defs.' Mot. to Dismiss [6].)

### DISCUSSION

**I.   MOTION TO DISMISS STANDARD**

In deciding a motion to dismiss, the Court assumes that all of the allegations in the complaint are true and construes the facts in favor of the plaintiff.  *Randall v. Scott,* 610 F.3d 701, 705 (11th Cir. 2010).  That said, in order to avoid dismissal a complaint "must contain sufficient factual matter, accepted as true, to 'state a

5

...

claim [for] relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is "facial[ly] plausib[le]" when it is supported with facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## II.  FIRST AMENDMENT RETALIATION

In Count I of the complaint, plaintiff asserts a First Amendment claim.  (Compl. [1] at ¶¶ 96-103.)  As a threshold requirement for that claim, plaintiff must show that he engaged in protected speech. *Battle v. Bd. of Regents for Ga.*, 468 F.3d 755, 760 (11th Cir. 2006). A public employee's speech is only protected when the employee speaks "as a citizen on a matter of public concern." *Id. See also Mitchell v. Hillsborough Cnty.*, 468 F.3d 1276, 1284 (11th Cir. 2006)(speech made in an employment capacity is not protected).  Thus, personal grievances and work-related complaints do not implicate the First Amendment.  *Mitchell,* 468 F.3d at 1284.  *See also Garcetti v. Ceballos,* 547 U.S. 410, 421 (2006)(emphasizing that a public employee must speak as a citizen to be protected under the First Amendment) and *Boyce v. Andrew,* 510 F.3d 1333, 1345 (11th Cir. 2007)(First Amendment protection is not available to speech that only pertains to internal employee matters).

While certainly troubling, the statements that form the basis of

6

plaintiff's complaint are all personal and work-related grievances. Plaintiff complained to his supervisors and other AISS officials that his classes were overcrowded and that school administrators failed to (1) provide him with adequate support for disabled students or (2) respond properly to disciplinary issues. (Compl. [1] at ¶¶ 38, 40-53.) Plaintiff acknowledges that these complaints were primarily intended to improve his classroom and work environment. (*Id.*) They were not designed to air or publicly criticize the substantial problems that existed at Douglass High School.

Indeed, plaintiff did not comment on the problems at Douglass in any context outside of the AISS hierarchy. All of his complaints were made to his direct superiors at Douglass and eventually to higher AISS officials. *Compare Pickering v. Bd. of Ed. of Township High Sch. Dist. 206, Will Cnty., Ill.*, 391 U.S. 563, 565-66 (1968)(finding that a teacher's dismissal violated the First Amendment where it was motivated by his letter to the local paper concerning a school funding issue). Plaintiff concedes that it was his reporting up the chain of command concerning the conditions in his classroom and the school that motivated the alleged retaliation against him, rather than his attempt to bring to public light the issues that he observed. *See Abdur-Rahman v. Walker*, 567 F.3d 1278, 1283 (11th Cir. 2009)(speech that "owes its existence to an employee's professional duties" is not protected by the First

7

Amendment).

The Court agrees with plaintiff that the topic of his speech is relevant to the public at large.  The condition of certain schools within the AISS is, and has for years, been an issue of grave public concern.  Assuming plaintiff's description is accurate, the deficiencies and failure of leadership that he observed at Douglass should be subject to public scrutiny.  But the speech alleged in plaintiff's complaint was not intended or designed to accomplish that objective.  *See Boyce,* 510 F.3d at 1344 (a public employee cannot "'transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run'")(quoting *Ferrara v. Mills*, 781 F.2d 1508, 1516 (11th Cir. 1986)).  Instead, it was an unfortunately unsuccessful attempt to enhance plaintiff's performance and improve his work conditions.  As plaintiff thus spoke as an employee rather than as a citizen, the motion to dismiss [6] is **GRANTED** as to Count I of the complaint.

**III. ADA AND REHABILITATION ACT CLAIMS**

    **A. Viability Of ADA And Rehab Claims, On Merits, Against Defendants**

In Counts II and III of the Complaint, plaintiff asserts that he was retaliated against in violation of the ADA and the Rehab Act. (Compl. [1] at ¶¶ 104-113.)  Specifically, plaintiff argues that his superiors fired him because he informed them that disabled students

8

at Douglass were not receiving an appropriate education, as required by the Individuals with Disabilities Education Act ("IDEA").  (*Id.*)  According to plaintiff, his dismissal violated a provision of the ADA that prohibits retaliation against an employee for "oppos[ing] any act or practice made unlawful" by the Act.  42 U.S.C. § 12203(a).  This anti-retaliation provision is also incorporated into § 504 of the Rehab Act, which applies to federal agencies and other entities that contract with the federal government or receive federal funds.  *See Burgos-Stefanelli v. Sec'y, United States Dep't of Homeland Sec.*, 410 Fed. App'x 243, 245 (11th Cir. 2011)(the Rehab Act "incorporates the anti-retaliation provision from § 12203(a)" of the ADA) and 29 U.S.C. §§ 701 *et seq.*

Defendants argue that plaintiff failed to allege a sufficient causal connection to support these retaliations claims.  (Defs.' Br. [6] at 14-16.)  The Eleventh Circuit construes the causation element of a retaliation claim broadly so that a plaintiff merely has to show the protected activity and the adverse action are not completely unrelated.  *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004).  Plaintiff alleges several hostile actions that occurred throughout the 2010-2011 school year, including his termination at the end of the year.  (Compl. [1] at ¶ 106).  Without the benefit of discovery, the Court cannot determine whether a causal relationship exists between these actions and plaintiff's statements concerning disabled

students. Based on the allegations, there is at least a plausible connection. Accordingly, defendants' motion to dismiss Counts II and III on the ground that the counts fail to state a claim is **DENIED.**

### B. Whether The Individual Defendants Can Be Sued For Retaliation Outlawed By The ADA And Rehab Acts

Defendants Bailey and Glanton argue that they cannot be sued pursuant to the anti-retaliation provision found in the ADA and incorporated into the Rehab Act as there is no individual liability for retaliation under the ADA/Rehab Act when the act opposed by the plaintiff is made unlawful by the ADA provisions concerning employment. *See Albra v. Advan, Inc.*, 490 F.3d 826 (11th Cir. 2007). In *Albra,* the plaintiff had sued his corporate employer and supervisors in that company for discriminating against him based on his HIV status and for retaliating against him when he complained about their discrimination to the EEOC. Examining the text of the relevant provisions of the ADA, the Eleventh Circuit concluded that a plaintiff could not sue an individual supervisor for retaliation occurring in an employment context (Subchapter I). *Id*. at 830-34. Nevertheless, as noted by plaintiff and the *Albra* panel, an individual may be held liable for retaliation in the context of prohibited conduct in the public services arena (Subchapter II). *See Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1169-70 (11th Cir. 2003).

10

Plaintiff, here, was an employee who was fired.  But he was not fired because of retaliation based on his complaints about discrimination against him based on any disability he might have had.  Rather, he was allegedly fired, in part, because of his complaints about the defendant school system and its supervisors' failure to provide appropriate educational services to disabled students.  Whether that places this case in the *Alba* block, because the plaintiff was an employee who was fired, or the *Shotz* category, because the plaintiff was complaining about the denial of a public service to those allegedly protected under the Acts, the undersigned does not know for sure.  One might reasonably suspect that employment is employment and, if that is so, probably *Alba* should control.  Yet, before persuading the Court to dismiss this count against the individual defendants, the latter need to do a better job explaining to the Court the intersection of *Alba* and *Shotz*, and how those two cases should apply here.[2]  Accordingly, the individual defendants' motion to dismiss the ADA and Rehab Act claims is **DENIED.**

IV. **GEORGIA WHISTLEBLOWER ACT CLAIM**

In Count IV of the complaint, plaintiff asserts a claim under the anti-retaliation provision of the Georgia Whistleblower Act, O.C.G.A. § 45-1-4(d)(2).  (Compl. [1] at ¶¶ 114-120.)  In support of

---

[2] The individual defendants have made no claim of qualified immunity as to the ADA and Rehab Act claims.

11

this claim, plaintiff alleges that defendants terminated him for "disclosing a violation of or noncompliance with a law, rule, or regulation." (*Id.* at ¶ 115.)  Defendants argue that plaintiff's Whistleblower Act claim is time-barred because he did not bring an action under that Act within a year of first discovering the retaliation. (Defs.' Br. [6] at 18.)  The Court agrees.

The Whistleblower Act requires that any action brought pursuant to its terms be filed "within one year after discovering the retaliation or within three years after the retaliation, whichever is earlier." O.C.G.A. § 45-1-4(e)(1).  Plaintiff alleges that Superintendent Hall informed him on May 12, 2011 that his contract was recommended for non-renewal, and that his termination was effective May 26, 2011. (Compl. [1] at ¶ 71.)  He also alleges several adverse actions taken against him prior to May 2011. (*Id.* at ¶¶ 56-70.)  As plaintiff states repeatedly in his complaint, these actions coincided with plaintiff's voicing his concerns to Glanton, Bailey, and other AISS administrators. (*Id.*)  Based on his allegations, plaintiff must have discovered the retaliation at some point during the 2010-11 school year or at the very latest when he was informed of his termination in May 2011. Yet, plaintiff did not file his Whistleblower Act claim until August 6, 2012, well outside of the one-year deadline. (*Id.* at 1.)

The Court cannot conceive of any reason why plaintiff

12

experienced the alleged adverse employment actions but did not learn that they were retaliatory until after August 2011. Moreover, and contrary to plaintiff's argument, it is irrelevant that the Georgia Board of Education did not uphold plaintiff's termination until October 19, 2011. *See Stokes v. Savannah State Univ.*, 291 Fed. App'x 931, 932 (11th Cir. 2008)(holding a whistleblower suit untimely based on the date that plaintiff's employer confirmed his termination rather than the date the termination decision was upheld by the Board of Regents). As plaintiff's Whistleblower Act claim is untimely, the motion to dismiss [6] is **GRANTED** as to Count IV of the complaint.

## CONCLUSION

For the above reasons, defendants' Motion to Dismiss [6] is **GRANTED in part** and **DENIED in part.** The claims in Counts I and IV of the complaint are **DISMISSED;** the claims in Counts II and III may proceed.

SO ORDERED, this 20th day of September, 2013.

/s/ Julie E. Carnes
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

13